UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 18-5639-MWF (JPRx)  Date: October 23, 2018
Title: Tal Amar v. Excalibur Moving Group, LLC

Present: The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

| Deputy Clerk: | Court Reporter: |
| --- | --- |
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
| --- | --- |
| None Present | None Present |

**Proceedings (In Chambers):** ORDER RE: MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION [19]

Before the Court is Plaintiff Tal Amar dba Excalibur's ("Tal Amar") Motion for Entry of Default Judgment against Defendant Excalibur Moving Group, LLC ("EMG") (the "Motion"), filed on September 16, 2018. (Docket No. 19). Plaintiff filed a Statement of No Opposition on October 5, 2018. (Docket No. 21).

The Court has read and considered the Complaint and the papers filed in connection with the unopposed Motion, and held a hearing on October 22, 2018. No one purporting to represent Defendant appeared at the hearing.

For the reasons set forth below, the Motion is **GRANTED**. Plaintiff has satisfied all procedural and substantive requirements for a default judgment.

## I. BACKGROUND

The Complaint contains the following allegations, which are accepted as true for purposes of the Motion. *See* Fed. R. Civ. P. 8(b)(6); *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (internal quotation marks and citations omitted).

Plaintiff is a licensed carrier engaged in the business of providing moving and storage services primarily in California. (Complaint ("Compl.") ¶ 9 (Docket No. 1)).

Plaintiff has provided moving and storage services under the name Excalibur since at least May 2005. (*Id.*). Since May 2005, Plaintiff has continuously and extensively used the name Excalibur and various Excalibur-related marks to identify his moving and storage services. (*Id.* ¶ 10). Plaintiff has operated the website www.excaliburmovers.com to advertise his services since 2007. (*Id.*).

Plaintiff is the owner of United States Trademark Registration Number 4,746,594 for the mark "Excalibur," which has been registered since March 17, 2015. (Compl. ¶ 11). Plaintiff uses his mark in connection with "furniture moving, furniture storage, moving van services for furniture and household or office goods of others, packaging furniture and household or office good for transportation, transportation of household or office goods of others," with a date of first use in commerce as early as May 15, 2005. (*Id.*). Over the years, Plaintiff has prominently displayed Excalibur and Excalibur-related marks on promotion materials such as clothing and decals. (*Id.* ¶ 29). Plaintiff's Excalibur-related marks are readily recognized and have become famous among customers, members of the trade, and the general public. (*Id.* ¶ 28).

Defendant is a limited liability company organized and existing under the laws of the State of Florida, having its principal place of business in Boynton Beach, Florida. (Compl. ¶ 6). Defendant is a licensed broker engaged in the business of offering moving services to customers throughout the United States, including California. (*Id.* ¶ 13). Defendant began operating its business under the name "Excalibur Moving Group" in October 2017, using the name for its moving and storage services and promotion materials. (*Id.* ¶¶ 14-15). Defendant also offers its services to customers through its website, www.excaliburmovinggroup.com. (*Id.* ¶ 16).

In the Motion, Plaintiff claims to have first discovered the existence of EMG through the posting of negative reviews on various social media outlets. (Mot. at 3). Over the last several months, Plaintiff has received negative reviews intended for Defendant. (*Id.*). Based on client records, Plaintiff knows that at least seven 1-star reviews are not from his customers. (*Id.*). Several of the reviews mention that customers contracted with a broker, not a carrier. (*Id.* at 3-4). Several of the reviews

also mention routes that Plaintiff does not operate, as Plaintiff only handles moves that either originate or terminate in California.  (*Id.* at 5).

Between December 2017 and January 2018, Plaintiff attempted to contact Defendant several times to request that Defendant cease using the Excalibur name.  (Mot. at 6-7).  Plaintiff was able to speak with one of Defendant's sale representatives, who connected Plaintiff to Anthony Regalbuto, the owner of EMG.  (*Id.* at 7).  Regalbuto asked Plaintiff to call back, but Plaintiff has not been able to make contact with Regalbuto since.  (*Id.*).  On one occasion, Plaintiff was called by a person claiming to be Defendant's lawyer, but Plaintiff has not heard back from this person either.  (*Id.*).

Since December 2007, Plaintiff has seen a decrease in total revenue of about $200,000.  (Declaration of Tal Amar (Tal Amar Decl.") ¶ 44 (Docket No. 19-3)).  From January to August 2018, Plaintiff's total revenue was about $2,455,000, for a monthly average revenue of about $306,875.  (*Id.* ¶ 43).  For the same time period in 2017, Plaintiff's total revenue was about $2,653,000, for a monthly average revenue of about $331,625.  (*Id.*).

On June 26, 2018, Plaintiff commenced this action asserting five claims for relief: (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114; (2) false designation of origin and misrepresentation in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) trademark infringement pursuant to California common law and California Business and Professions Code § 14330; and (5) unfair competition in violation of California common law and California Business and Professions Code §§ 17200 and 17500.  (Compl. ¶¶ 20-53).

On August 20, 2018, the Court entered a preliminary injunction enjoining Defendant and its affiliates from infringing on Plaintiff's trademark pending final determination of the action.  (Docket No. 18).

Through the Motion, Plaintiff seeks a judgment against Defendant for $600,000; $15,600 in attorneys' fees; and a permanent injunction.  (Mot. at 18).

## II.    DISCUSSION

### A.    Service and Other Procedural Requirements

Having reviewed the filings in this action, the Court is satisfied that Plaintiff has met all procedural requirements for obtaining a default judgment against Defendant.

On July 16, 2018, Plaintiff's service processor personally served Defendant by leaving a copy of the Summons and Complaint with Joseph Tonanto at Defendant's place of business, located at 639 E. Ocean Ave., Suite 406, Boynton Beach, Florida, 33435.  (Proof of Service (Docket No. 12)).  Mr. Tonanto is a manager of EMG.  (*Id.*). Accordingly, under Federal Rule of Civil Procedure 4, the Court is satisfied that Defendant was properly served and did receive actual notice of this lawsuit.

As a matter of discretion, the Court also requires that a plaintiff serve an application for default judgment on the relevant defendant(s).  The Court does not require service under Rule 4, but does require that the service is reasonably likely to provide notice to the defendant(s).  On June 27, 2018, Plaintiff sent the Motion papers to Defendant at 639 E. Ocean Ave., Suite 406, Boynton Beach, Florida, 33435 via first class U.S. mail and to Defendant's business email address.  (Docket No. 20).  The Court is therefore satisfied that Defendant has actual notice of the Motion.  At the hearing, Plaintiff indicated that he has heard nothing since commencing this action from Defendant or anyone purporting to represent Defendant.

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk under Rule 55(a).  Having reviewed the filings in this action, the Court determines that the procedural requirements imposed by Federal Rule of Civil Procedure 55 and Local Rule 55-1 are met as to Defendant: (1) the Clerk entered Defendant's default on August 16, 2018; (2) Defendant failed to respond to the Complaint; (3) Defendant is not an infant or incompetent person; (4) Defendant is not serving in the military and thus the Service Members Civil Relief Act does not apply; and (5) Plaintiff served Defendant with notice of the Motion and

supporting papers on June 27, 2018, in a manner deemed appropriate by the Court. (*See* Docket Nos. 16, 20).

Accordingly, Plaintiff has satisfied the procedural requirements for obtaining entry of a default judgment.

### B.      The *Eitel* Factors

The choice as to whether a default judgment should be entered is at the sole discretion of the trial court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has determined that a court should consider seven discretionary factors before rendering a decision on motion for default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

The seven factors are: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring a decision on the merits. *Id*.

The Court determines that, with the exception of the strong policy favoring a decision on the merits, which is not dispositive, the *Eitel* factors weigh in favor of granting the Motion.

### C.      Remedies

Having determined that default judgment is appropriate, the Court next must consider remedies. Plaintiff seeks an award of $600,000, representing treble money damages; attorneys' fees in the amount of $15,600; and injunctive relief. (Mot. at 18). Plaintiff's request is proper because it does not "differ in kind from, or exceed in amount, what is demanded in the pleadings." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010) (quoting Fed. R. Civ. P. 54(c)).

### 1. Damages

Plaintiff first seeks damages totaling $600,000, representing treble money damages from lost revenue for the eight months between January 2018 and August of 2018. (Mot. at 8). During this time period, Plaintiff's total revenue was about $2,455,000, for a monthly average revenue of about $306,875. (Tal Amar Decl. ¶ 43). For the same time period in 2017, Plaintiff's total revenue was about $2,653,000, for a monthly average revenue of about $331,625. (*Id.*). This represents $198,000 in lost revenue during the relevant time period. (Mot. at 17).

The Court is satisfied with Plaintiff's calculation of its damages arising from Defendants' infringement. Accordingly, the Court awards Plaintiff a total of **$600,000** in damages.

### 2. Attorneys' Fees

Plaintiff also requests attorneys' fees under section 1117(a) of the Lanham Act, which authorizes reasonable attorneys' fees for the prevailing party in "exceptional case[s]." (Mot. at 17). "A trademark case is exceptional where [as here] the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully." *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th Cir. 2005).

The Court agrees that an award of attorneys' fees is warranted in this action. The Court will award Plaintiff its reasonable attorneys' fees based upon the damages award of $600,000. Plaintiff asks for reasonable fees as set forth in the default judgment fee schedule under Local Rule 55-3. (Mot. at 17). The Local Rule provides that for any damages award greater than $100,000, reasonable attorneys' fees amounts to $5,600 plus 2% of the amount over $100,000. Because the Court has calculated a total damage award of $600,000 the Court **GRANTS** Plaintiff's request and awards **$15,600** ($5,600 + (500,000 x 0.02)) in attorneys' fees.

### 3. Injunctive Relief

Finally, Plaintiff requests entry of a permanent injunction. "Under the Lanham Act, 'the district court has the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner.'" *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (quoting *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006)) (internal quotation marks and alterations omitted). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Plaintiff requests entry of a permanent injunction restraining Defendant from:

(a) infringing upon Tal Amar's Trademark Registration No. 4,746,594;

(b) using EXCALIBUR MOVING GROUP, or any name or phrase including "EXCALIBUR" for or in connection with marketing, advertising, promoting and/or selling moving and storage services or related goods/services;

(c) using any word, name, mark, designation, logo or other materials for or in connection with marketing, advertising, promoting and/or selling moving and storage services or related goods/services – which is likely to cause confusion, mistake or deception as to source relative to any of Plaintiff's names, marks, designations of origin, logos, including EXCALIBUR, EXCALIBUR-related marks, or phrases including "EXCALIBUR";

(d) using a website or domain name including the word "Excalibur" for marketing, advertising, promoting and/or selling moving and storage services;

(e) passing off their goods/services as Tal Amar's goods/services;

(f) practicing unfair competition, unfair trade practices, false advertising and/or misappropriation of Tal Amar's trade identity; and

(g) practicing any conduct aimed at or likely to result in diverting business intended for Tal Amar or injuring Tal Amar's good will and business reputation by way of imitation, misappropriation, false statements, fraud, advertising and/or deception.

(*See* Proposed Permanent Injunction (Docket No. 19-7)).

Plaintiff has demonstrated that, absent entry of a permanent injunction, it is possible that Defendant or its affiliates will continue to infringe on Plaintiff's trademark, especially since Defendant has failed to heed the Court's preliminary injunction issued on August 20, 2018. As in *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, "[f]ailure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm." 219 F.R.D. 494, 502 (C.D. Cal. 2003). The Court finds that these terms are reasonable.

Accordingly, Plaintiff's request for entry of a permanent injunction in accordance with the above terms is **GRANTED**.

### III. CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**. A separate judgment will issue.

IT IS SO ORDERED.